Filed 7/10/13  Kelton v.  Coverning Bd. Educ. Nuview Union School Dist. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| JAMES KELTON, | |
| Plaintiff and Appellant, | E054391 |
| v. | (Super.Ct.No. RIC501338) |
| GOVERNING BOARD OF EDUCATION OF NUVIEW UNION SCHOOL DISTRICT et al., | **OPINION** |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Paulette Durand-Barkley, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Aviles & Associates and Moises A. Aviles for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Mark W. Thompson and Brooke E. Jimenez for Defendants and Respondents.

Defendants, the Governing Board of Education of Nuview Union School District and the Nuview Union School District (collectively the District), terminated plaintiff James Kelton, a teacher.  The District allegedly selected him for termination because he lacked authorization to teach English learners, even though he had emergency

1

authorization, and even though the District retained at least one younger teacher who likewise had only emergency authorization.

Kelton filed this action against the District, asserting one cause of action for a writ of administrative mandate and a second cause of action for age discrimination. These causes of action were bifurcated. The trial court denied Kelton's mandate claim. The case was then set for a jury trial on his age discrimination claim.

The District filed a motion for summary judgment. The earliest available hearing date for the motion, however, was after the trial date. The District therefore brought an ex parte application to specially set the hearing on the motion, which the trial court granted. Later, Kelton brought an ex parte application to continue the hearing on the motion for summary judgment, which the trial court denied. The trial court then proceeded to grant the motion for summary judgment.

Kelton appeals, contending the trial court erred by:

1. Granting the District's application to specially set the hearing on the motion for summary judgment.

2. Denying Kelton's application for a continuance of the hearing on the motion for summary judgment.

3. Granting summary judgment.

Kelton has failed to demonstrate any prejudicial error. Accordingly, we will affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

On February 3, 2011, there was a trial setting conference. It was held in Department 1 before Judge Mac R. Fisher. Both sides requested a trial date in August 2011. Nevertheless, Judge Fisher set a trial date of June 17, 2011. He apparently commented[1] that the court was not going to allow any additional time for a motion for summary judgment because the District had been "dilatory" and "did nothing on this case for two years . . . ."

On March 2, 2011, the District filed a motion for summary judgment. It had to give at least 75 days' notice. (Code Civ. Proc., § 437c, subd. (a).) Also, the motion had to be heard at least 30 days before the trial date, unless the trial court "for good cause" ordered otherwise. (*Ibid.*) Both conditions could have been met, provided the hearing was set for either May 16, 17, or 18. When the District filed the motion, however, the court clerk informed the District that the earliest available date was June 22, 2011. That meant that the motion would not be heard before trial.

Accordingly, on March 4, 2011, the District filed an ex parte application to specially set the hearing on the motion for summary judgment.

Kelton filed a written opposition. He argued that Judge Fisher had already decided not to allow any more time for a motion for summary judgment.

---

[1]     The record does not include a reporter's transcript of the trial setting conference. However, Kelton's counsel later submitted a declaration paraphrasing Judge Fisher's comments.

On March 7, 2011, the ex parte application was heard in Department 2 before Commissioner Paulette Durand-Barkley. She granted the application and reset the hearing for May 25, 2011.

At that point, Kelton's opposition to the motion for summary judgment was due by May 11, 2011 (i.e., 14 days before the hearing on May 25). (Code Civ. Proc., § 437c, subd. (b)(2).) However, Kelton did not actually file his opposition until May 23, 2011.

On the same date, Kelton also brought an ex parte application to continue the hearing date on the motion for summary judgment as well as the trial date.

In support of the application, Kelton's counsel's paralegal testified that on May 6, he had mistakenly calendared the hearing for the original date (June 22) rather than the new date (May 25).

Kelton's counsel himself also testified that his uncle had died of a heart attack "early last week, which he suffered a few days earlier."[2] Because counsel was attending his uncle while he was on life support and was "involved" with the funeral arrangements, he "was not able to devote much time to" opposing the summary judgment motion.

The trial court denied the application. It accepted Kelton's late-filed opposition; the District waived its right to file a reply.

---

[2]    As the District points out, "counsel [wa]s vague on the actual date of his uncle's passing . . . ." Counsel's declaration was dated May 19, 2011, a Thursday. Thus, counsel's uncle apparently passed away sometime between Sunday, May 8, and Wednesday, May 11.

At a hearing, however, Kelton's counsel represented that his uncle "passed away on May 5th," after being "two weeks at the hospital." At another hearing, he represented that his uncle's "death occurred May 7th . . . ."

Accordingly, the hearing on the motion for summary judgment went forward on May 25, 2011, as scheduled. The trial court heard argument and took the matter under submission. Thereafter, it granted the motion and entered judgment against Kelton and in favor of the District.

## II

## SPECIALLY SETTING THE MOTION FOR SUMMARY JUDGMENT

Kelton contends that the trial court erred by specially setting the hearing on the motion for summary judgment. He relies on the principle of priority of jurisdiction.

Preliminarily, we note that this is a different argument than Kelton raised below. In the trial court, he merely argued that Commissioner Durand-Barkley could not reverse or overrule Judge Fisher. However, as the District points out, there was no actual conflict between the two rulings. First, Judge Fisher ruled that the trial would start on June 27, 2011. Commissioner Durand-Barkley then moved up the date of the hearing on the motion for summary judgment so that it could be heard before that trial date. Even assuming Judge Fisher made some comment about not giving the District more time for a motion for summary judgment, he did not make any *ruling* to that effect. Moreover, Commissioner Durand-Barkley's ruling did not actually give the District any more time.

Kelton's present argument, however, is more sweeping. It is not that the two rulings conflicted; rather, it is that Judge Fisher had exclusive jurisdiction of the entire case, so that "any attempt to advance the [h]earing on [s]ummary [j]udgment should have been heard before Judge Fisher . . . ." We conclude, however, that that is incorrect,

5

because the case was assigned to Judge Fisher solely for the limited purpose of assigning a trial date and a trial department.

" . . . "'[W]here a proceeding has been duly assigned for hearing and determination to one department of the superior court by the presiding judge of said court in conformity with the rules thereof, and the proceeding so assigned has not been finally disposed of therein or legally removed therefrom, it is beyond the jurisdictional authority of another department of the same court to interfere with the exercise of the power of the department to which the proceeding has been so assigned. [Citation.] In other words, *while one department is exercising the jurisdiction vested by the Constitution in the superior court of that county*, the other departments thereof are as distinct therefrom as other superior courts. [Citation.] If such were not the law, conflicting adjudications of the same subject-matter by different departments of the one court would bring about an anomalous situation and doubtless lead to much confusion.'" [Citation.]" (*Wozniak v. Lucutz* (2002) 102 Cal.App.4th 1031, 1040-1041, italics added, disapproved on other grounds in *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107, fn. 5.)

Nevertheless, "[t]he system of distribution of business among departments, particularly in the larger counties, often results in different departments properly hearing and determining different parts of an action or proceeding. Thus, one department may try an action or proceeding, and another may hear motions after judgment. [Citations.] May the judge in the second department make a determination inconsistent with that of the judge of the first department? Clearly so.

6

"There is *no jurisdictional conflict* if the cause has actually been transferred to the second department, so that the first department is no longer exercising continuing jurisdiction. And the first determination of a preliminary or interlocutory matter, e.g., an intermediate ruling on pleadings, is not res judicata. The judge who made the ruling may reverse himself or herself [citation], and it necessarily follows that another judge of the same court exercising the jurisdiction over the cause may likewise reverse or modify the prior ruling. [Citations.]" (2 Witkin, Cal. Proc. 5th (2008) Courts, § 233, p. 321.)

Under the Riverside local rules: "Upon the filing of a complaint, or other initial pleading, the Court shall assign the action to a Case Management Department. At any time thereafter, the Court may reassign the case to another judge, commissioner, temporary judge, or referee for any purpose authorized by law. Unless otherwise reassigned, the Case Management Department will hear pretrial law and motion matters. For purposes of trial, the Master Trial Calendar Department shall assign the case a trial date and trial department." (Super. Ct. Riverside County, Local Rules, former Rule 11.0060(A); see now Super. Ct. Riverside County, Local Rules, Rule 3120(A).)

Here, Judge Fisher was in Department 1, the Master Calendar Department. Thus, he was authorized to assign the case for trial, and he did so. However, he was not authorized to hear pretrial law and motion matters. When the ex parte application was filed, it was duly assigned to Commissioner Durand-Barkley in Department 2. Accordingly, the matter was properly before Commissioner Durand-Barkley. Moreover, she was free to reverse, modify, or redetermine any ruling by Judge Fisher (with the possible exception of setting the trial date and department).

7

Kelton also argues that the trial court abused its discretion, because "[t]he District was not prejudiced by a [m]otion for [s]ummary [j]udgment that was set for [h]earing after the [t]rial." This is absurd. Of course the District was prejudiced. "'The policy underlying motions for summary judgment and summary adjudication of issues is to "'promote and protect the administration of justice, and to expedite litigation by the elimination of needless trials.'" [Citations.]' [Citation.]" (*Cole v. California Ins. Guar. Assn.* (2004) 122 Cal.App.4th 552, 556.) Here, the motion for summary judgment, if granted, would obviate the need for any trial at all.

The District's motion was timely. Moreover, when it was filed, there was still time for it to be heard within the statutory timeframe. The only problem was that the trial court's calendar was full. Under these circumstances, the trial court would have erred if it had *denied* the application to specially set. (*Sentry Ins. Co. v. Superior Court* (1989) 207 Cal.App.3d 526, 529-530.) "A trial court may not refuse to hear a summary judgment motion filed within the time limits of section 437c. [Citation.] Local rules and practices may not be applied so as to prevent the filing and hearing of such a motion. [Citation.]" (*Id*. at p. 529.)

Finally, Kelton also relies on *Urshan v. Musicians' Credit Union* (2004) 120 Cal.App.4th 758, which held that a trial court could not shorten the 75-day minimum notice period applicable to a motion for summary judgment without the consent of the parties. (*Id*. at pp. 763-766.) But that is not what the trial court did. Kelton had all the notice to which he was entitled — indeed, more, as he filed his opposition late.

8

We therefore conclude that the trial court properly granted the application to specially set.

## III

## REFUSING TO CONTINUE THE MOTION FOR SUMMARY JUDGMENT

Kelton also contends that the trial court erred by denying a continuance of the hearing on the motion for summary judgment.

"We review the trial court's ruling denying the continuance for abuse of discretion. [Citations.]" (*Dailey v. Sears, Roebuck & Co.* (2013) 214 Cal.App.4th 974, 1004.) "Under this standard, we will not reverse the trial court unless [the appellant] persuades us the court's decision was beyond the bounds of reason. [Citation.]" (*Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419, 1438.)

Here, Kelton failed to show good cause for a continuance. Despite the death of his counsel's uncle, and despite the paralegal's mistake, his counsel did manage to file an opposition to the motion for summary judgment. At the hearing on the application for a continuance, the trial court repeatedly asked if he had filed an opposition, and he just as repeatedly insisted, "Everything has been filed . . . ." Admittedly, at one point, he did claim, "I'm not in a position to argue today." However, the trial court asked, incredulously, "Sir, how can you not be ready to argue if you already filed your opposition?" He then replied, "Okay, if the Court wants to argue." Thus, he forfeited any claim that he was unprepared. In any event, even as late as this appeal, he does not suggest that, if the continuance had been granted, there was any different or additional evidence or argument that he could have presented.

9

Separately and alternatively, even assuming the trial court did err, Kelton has not shown prejudice. On this record, it appears that, even if the continuance had been granted, the trial court ultimately would have granted the motion for summary judgment. Certainly Kelton does not explain how or why the outcome would have been different. Thus, the error, if any, is not reversible. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

IV

GRANTING SUMMARY JUDGMENT

Finally, Kelton contends that the trial court erred by granting summary judgment.

Kelton has forfeited this contention, however, by failing to discuss any of the evidence offered in support of and in opposition to the motion. "An appealed-from judgment or order is presumed correct. [Citation.]" (*In re Sade C*. (1996) 13 Cal.4th 952, 994.) "[T]he burden rests upon appellant . . . to affirmatively demonstrate the error which it asserts. [Citation.]" (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 70.) The propriety of granting summary judgment turns on whether "the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) Thus, Kelton cannot obtain reversal unless he can show that the evidence raised a triable issue of fact.

Many of Kelton's factual assertions are not cited to the record at all. "Any reference in an appellate brief to [a] matter in the record must be supported by a citation to the volume and page number of the record where that matter may be found.

10

[Citation.]"  (*Sky River LLC v. County of Kern* (2013) 214 Cal.App.4th 720, 741.) "Rather than scour the record unguided, we may decide that the appellant has waived a point urged on appeal when it is not supported by accurate citations to the record. [Citations.]"  (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287.)

The handful of citations that Kelton does supply are to the allegations of his own operative complaint.  However, "a party cannot rely on the allegations of his or her own pleadings to make an evidentiary showing in support of or in opposition to a motion for summary judgment.  [Citation.]"  (*Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 933.)  "The basic purpose of summary judgment is to provide a means by which the court determines whether 'the triable issues apparently raised by [the complaint and answer] are real or merely the product of adept pleading.'  [Citation.]  Hence, the moving party must demonstrate the presence or absence of a genuine triable issue by 'affidavit' or other competent means.  [Citation.]"  (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 720, fn. 7.)

Kelton has also forfeited this contention for the separate and alternative reason that he fails to address most of the grounds of the District's motion.  The District moved for summary judgment on grounds including that:  (1) the trial court's ruling on Kelton's first cause of action (for a writ of mandate) barred his second cause of action (for age discrimination); (2) Kelton could not show that he was qualified for and performing competently in the position he held; and (3) Kelton could not show that the District acted with a discriminatory motive.

11

In his opening brief, Kelton did not bother to address any of these arguments by the District. Moreover, even though the District reasserted these arguments in its respondent's brief, Kelton did not bother to file a reply brief. "'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."' [Citation.]" (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) Under these circumstances, Kelton has not overcome the presumption that the trial court's ruling was correct for each and every one of these reasons.

V

DISPOSITION

The judgment is affirmed. The District is awarded costs on appeal against Kelton.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI_____
J.

We concur:


HOLLENHORST_____
          Acting P. J.


KING_____
          J.


12